IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-01604-WDM-MJW

CHANDLER LYLES,

    Plaintiff,

v.

RYAN BURKE and
CITY AND COUNTY OF DENVER,

    Defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Miller, J.

This matter is before me on a Defendants' motion for summary judgment filed May 31, 2007 (Docket No. 25). After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the motion for summary judgment shall be granted in part and denied in part.

### Background

This action arises out of Plaintiff's arrest on June 22, 2004. Two uniformed Denver police officers, Defendant Officer Ryan Burke (Burke) and Officer Daniel Green (Green), were dispatched to an apartment in Denver to investigate a report of a suicidal female. Sharon Lyles (Ms. Lyles), later determined to be Plaintiff's mother, lived at the apartment and answered the door that night. During an initial conversation with the officers, Ms. Lyles stated that she was not suicidal and that there was no one else in the apartment. However, Plaintiff had been in the apartment immediately before the

officers entered but had exited the apartment to avoid the police and was waiting on the apartment balcony for the officers to leave.

Ms. Lyles then asked the officers if they would like to see her rose bushes on the balcony. When Burke accompanied her to the balcony he saw Plaintiff on the balcony smoking a cigarette. According to Plaintiff, Burke then ordered Plaintiff to "get in here" twice. Plaintiff abided and reentered the apartment. Burke then ordered Plaintiff to sit on the couch. Plaintiff did not comply, but remained standing despite both Burke's threat of placing him in handcuffs if he did not comply and his mother's attempts to get him to sit. Plaintiff continued to stand, made a comment about leaving the apartment, may have made a motion as if he were going to leave the apartment, and raised both hands in the air. In response Burke grabbed Plaintiff's right arm and Green grabbed Plaintiff's left arm. Although slightly unclear, it appears that while Burke was attempting to handcuff Plaintiff, Plaintiff pulled Burke to the kitchen. However, Burke was able to handcuff Plaintiff in the kitchen. Defendants describe the incident as a scuffle and contend that all physical contact between Burke and Plaintiff occurred while Burke was trying to handcuff Plaintiff and subdue him. According to Plaintiff, he was fully handcuffed and docilely kneeling on the floor when Burke kneed him in the back several times, punched him in the mouth, and hit him on top of the head with a Mace container. Then, while Plaintiff was lying flat on his stomach, Burke allegedly pulled Plaintiff's handcuffed arms up behind his back towards his head. This pressure on Plaintiff's arms allegedly caused serious injury to his shoulder including a broken clavicle. Plaintiff admits that he continued to move after he was handcuffed and laying

2

on the ground at least by moving his head to get all of Burke's weight off of him.[1]

Plaintiff has undergone three surgeries to repair his shoulder and clavicle. Plaintiff also suffered an injured wrist and neck from the incident.

Plaintiff brought suit alleging claims of (1) "procedural and substantive due process rights under the Fourth Amendment, the Eighth Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983;" (2) battery; (3) outrageous conduct; and (4) negligence. In an Order dated March 7, 2007, I dismissed Plaintiff's second, third, and fourth claims for relief for lack of subject matter jurisdiction.[2] In his section 1983 claim against Burke, Plaintiff alleges that Burke unlawfully injured him by using excessive and unwarranted force after he was handcuffed. Plaintiff bases his claim against the City and County of Denver (Denver) on its alleged failure to train and supervise Burke.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S.

---

[1] Plaintiff stated that he "did lift all [Burke's] weight up with my neck and just turn so that I could get all his weight off my head." (Pl.'s Dep. 177:13–15.)

[2] Plaintiff did not set forth any argument in response to Defendants' motion to dismiss for lack of subject matter jurisdiction. As it is the plaintiff's burden to demonstrate subject matter jurisdiction, I dismissed these claims. *See Marcus v. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999) ("Because the jurisdiction of federal courts is limited, 'there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof.'" (quoting *Penteco Corp. v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991))).

242, 248 (1986). "When applying this standard, [the court] view[s] the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) (citing *Byers v. City of Albuquerque*, 150 F.3d 1271, 174 (10th Cir. 1998)).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.* (citing *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). The nonmovant is given 'wide berth to prove a factual controversy exists.'" *MacKenzie v. Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). A mere scintilla of evidence, however, is not sufficient to create a genuine issue of material fact and survive summary judgment. *Simms*, 165 F.3d at 1326 (quoting *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997)). "Unsupported conclusory allegations . . . [also] do not create an issue of fact." *MacKenzie*, 414 F.3d at 1273.

Discussion

1. <u>Qualified Immunity</u>

Defendants argue that Burke is entitled to qualified immunity because Plaintiff has not carried his burden as to either of prongs of a qualified immunity analysis—that

4

there was a deprivation of a constitutional right or that the right was clearly established at the time of the alleged violation.  Plaintiff responds by arguing that he was subjected to unreasonable excessive force, a deprivation of his Fourth Amendment rights, and the right to be free from such force after being handcuffed and subdued was clearly established by Tenth Circuit law at the time Burke engaged in such action.  I agree with Plaintiff.

"In civil rights actions seeking damages from governmental officials, those officials may raise the affirmative defense of qualified immunity, which protects all but the plainly incompetent or those who knowingly violate the law." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001).  When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to satisfy a "heavy two-part burden." *Id.* at 1186 (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)).  The plaintiff must "first establish that the defendant's actions violated a constitutional or statutory right." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  Thus, in the context of a motion for summary judgment, I must first consider the threshold question: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?" *Holland*, 268 F.3d at 1185.  If I determine that there has been a violation of a constitutional right, then I must "ask whether the right was clearly established at the time of defendant's unlawful conduct." *Id.* at 1186.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.*

(internal quotation omitted).  Generally, this means that "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as plaintiff maintains." *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002).  If the plaintiff successfully establishes the violation of a clearly established right, the burden shifts to the defendant, who must prove that there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law.  *Medina*, 252 F.3d at 1128; *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

In this case, Defendants' argument that there was no violation of a clearly established right focuses on a violation of a substantive or procedural due process right rather than a Fourth Amendment right.  However, although the heading to Plaintiff's first claim for relief[3] states that it is for violations of "procedural and substantive due process rights under the Fourth Amendment, the Eighth Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983," the allegations in the complaint assert a violation of Plaintiff's Fourth Amendment rights.[4]  The complaint alleges that "Defendants deprived Plaintiff of his rights to liberty, *freedom from unreasonable search and seizure*, and freedom from

---

[3] Plaintiffs' first claim for relief is the only claim that remains pending after my March 7, 2007 Order.

[4] The parties do not argue whether Burke is entitled to qualified immunity for violations of the Eighth Amendment.  However, claims for excessive force used during an arrest are analyzed under the Fourth Amendment and not the Eighth Amendment. See *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977) ("Eight Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."); *Graham . Connor*, 490 U.S. 386, 393 n.6 (1989) (citing *Ingraham*, 430 U.S. at 671 n.40).  Therefore, Plaintiff's claims for violations of the Eighth Amendment are superfluous.

6

cruel and unusual punishment" and specifies the violations that allegedly took place. (Compl. ¶ 17 (emphasis added).) Under a notice pleading standard, I conclude that this is sufficient to assert a claim for a Fourth Amendment violation. *See Barfield v. Commerce Bank, N.A.*, 484 F.3d 1276, 1281 (10th Cir. 2007) ("Although we 'do not require a claimant to set out in detail the facts upon which he bases his claim,' . . . we do require enough specificity for the defendant to be able to respond to the allegations." (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))). Furthermore, claims for excessive force are "most properly characterized" as claims under the Fourth Amendment. *Graham*, 490 U.S. at 394 (holding that when claims for excessive force are brought under section 1983 the "analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force" and that, when the "claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment"). Therefore, I will analyze Defendants' claim for qualified immunity under the Fourth Amendment standard.

In the first step of the qualified immunity analysis, I must determine whether "the facts alleged show the [official's] conduct violated a constitutional right." *Holland*, 268 F.3d at 1185. "Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment." *Medina*, 252 F.3d at 1131 (citing *Graham*, 490 U.S. at 395). The "reasonableness" analysis "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."

7

*Graham*, 490 U.S. at 396 (internal quotations omitted).  The determination of reasonableness is a fact-specific inquiry, requiring analysis of various factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.*  Furthermore, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight."  *Id.* (citations omitted).

Plaintiff has alleged that he was kneed in the back, punched in the face, and hit over the head while he was handcuffed and not fighting back.  He has further alleged that Burke forced his arms up behind his back causing his clavicle to break while he was laying flat on his stomach with his hands handcuffed behind his back.  Although she has a very poor memory of the events of that night, Ms. Lyles partially corroborates Plaintiff's allegations that Burke used this force on Plaintiff when Plaintiff was not fleeing or acting aggressively.

However, Burke's actions must be judged from the perspective of a reasonable officer at the scene.  *Graham*, 490 U.S. at 396.  Taking all facts in the light most favorable to Plaintiff and analyzing the situation from Burke's perspective, I conclude there is at least an issue of fact whether the amount of force used by Burke was objectively reasonable under the circumstances.  That night Burke was confronted with a person who refused to sit down even after being warned that he would be handcuffed if he did not comply, commented that he was going to leave, raised his hands in the air,

8

may have moved towards the door, pulled Burke towards the kitchen when Burke attempted to handcuff him, and continued to move after he was handcuffed on the floor. Although it may have been objectively reasonable for Burke to use force to handcuff Plaintiff and place him under arrest,[5] the amount of force used after Plaintiff was already in handcuffs was objectively disproportionate to the need in the situation. Plaintiff alleges that the majority of the force was applied after he was handcuffed and either kneeling on the floor or laying flat on his stomach on the floor. At this point in time, none of the *Graham* factors weigh in favor of a finding of reasonableness—the severity of the crime was minimal at most, Plaintiff no longer presented a danger to himself or others, and he was no longer resisting arrest or attempting to leave. Therefore, I conclude that Plaintiff has satisfied the first prong of his burden under the qualified immunity analysis by showing that there was a Fourth Amendment violation. Next, I must analyze whether the Fourth Amendment right was clearly established at the time of the violation.

It is clearly established that "the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001) (citing *Graham*, 490 U.S. at 395). Such a

---

[5] Of the three *Graham* factors, two weigh in favor of a finding of reasonableness—from Burke's perspective Plaintiff posed a threat to the officers (pulling Burke towards the kitchen, raising hands above head, and continuing to move once handcuffed on the floor) and was resisting arrest (failing to comply with Burke's order to sit on the couch, stating that he was leaving, perhaps moving towards the door, raising his hands above his head, and continuing to move once handcuffed on the floor). The third factor—the severity of the crime—weighs in favor of Plaintiff because at most Plaintiff was resisting arrest.

generalized establishment of a right, however, is not sufficient for purposes of qualified immunity analysis. *Id.* "The right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (internal quotations omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To carry his burden of establishing that the right was clearly established at the time of the unlawful conduct, Plaintiff cites to *Martinez v. N.M. Dep't of Public Safety*, 47 Fed. Appx. 513 (10th Cir. 2002). In *Martinez*, the plaintiff "was under arrest, was handcuffed, and was standing beside the police cruiser" refusing to enter the cruiser without seeing the officer's identification. 47 Fed. Appx. at 517. At this point the officer used mace on the plaintiff in an effort to get her to enter the cruiser. *Id.* The Tenth Circuit affirmed the district court's holding that "[t]he fact that the use of mace in this situation was excessive would have been clear to the reasonable officer." *Id.* (citation omitted). I agree with Plaintiff that this case clearly establishes Plaintiff's Fourth Amendment right to be free from physical force after being placed under arrest in handcuffs while not acting aggressively. In light of this case, it would have been clear to a reasonable officer that the use of such force allegedly used by Burke was excessive. Therefore, Plaintiff has met his "heavy two-part burden" to avoid summary judgment based on qualified immunity. *Holland*, 268 F.3d at 1186 (quoting *Albright*, 51 F.3d at 1534).

At this point, Defendants carry the burden to show that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.

*Medina*, 252 F.3d at 1128. Defendants have not carried this burden with respect to a Fourth Amendment violation—there remain genuine issues of fact regarding whether Burke used physical force against Plaintiff *during* a "scuffle" to handcuff and subdue Plaintiff (as Defendant alleges) or *after* Plaintiff was handcuffed and subdued (as Plaintiff alleges).[6] Therefore, summary judgment is not appropriate on Plaintiff's claims under the Fourth Amendment.

2. <u>Procedural Due Process Claims</u>

Defendants argue that they are entitled to summary judgment on Plaintiff's procedural due process claims because Plaintiff has not set forth any facts or allegations that he was entitled to process of any sort prior to being arrested. Plaintiff does not respond to this argument except to state that "the beating took place after no process, which is by definition a failure to provide procedural Due Process." (Compl. at 8.) I agree with Defendants—such a conclusory allegation by Plaintiff is insufficient to establish a disputed fact as to an essential element of the claim. *See MacKenzie*, 414 F.3d at 1273 ("Unsupported conclusory allegations . . . do not create an issue of fact.").

"In determining whether an individual has been deprived of his right to

---

[6] Defendants' argument in their reply brief that Plaintiff testified that he did not remember the sequence of events is without merit. Plaintiff clearly states that physical force was used against him after he was handcuffed and subdued. He claims that he was kneed, punched, hit over the head, and his arms were forced up behind his back while he was either kneeling on the ground or laying flat on his stomach. Plaintiff's comments about not remembering the sequence of events refer to the order of the physical abuses he alleges and not to whether the abuses occurred before or after he was handcuffed.

procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protection was applicable; and if so, then (2) was the individual afforded an appropriate level of process." *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir. 1994). Plaintiff has not demonstrated disputed facts as to either of the two elements of the claim. Merely stating that there was a violation is insufficient for summary judgment purposes. *See MacKenzie*, 414 F.3d at 1273. Furthermore, there is indication that the Fourth Amendment provides full constitutional protection for liberty interests and, as such, all claims for deprivations of liberty interests should be analyzed under the Fourth Amendment. *See Becker v. Kroll*, 494 F.3d 904, 920 (10th Cir. 2007) (holding that "the Fourth Amendment adequately protected [Plaintiff's] constitutional liberty interests, and she therefore has no procedural due process claim based on pre-trial deprivations of physical liberty" (citing *Albright v. Oliver*, 510 U.S. 266)); *see also Graham*, 490 U.S. at 395 (holding that the Fourth Amendment, not substantive due process, provided the proper standard by which to analyze a claim of excessive force because the Fourth Amendment "provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct"). Therefore, summary judgment is appropriate with respect to Plaintiff's procedural due process claims.

3.  Substantive Due Process Claims

    a.  *Claims against Burke*

Defendants argue that they are entitled to summary judgment on Plaintiff's substantive due process claims because Plaintiff has not demonstrated that Burke's

12

conduct "shocks the conscience." *See Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) ("The 'ultimate' standard for determining whether there has been a substantive due process violation is 'whether the challenged government action shocks the conscience of federal judges.'"). Plaintiff argues that the "beatings" he endured violated his substantive due process rights. (Resp. at 8.) However, I need not determine whether Burke's actions shock my conscience because the Fourth Amendment provides the proper analysis for excessive force claims. The Supreme Court has determined that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 395. "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.*; *Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) ("Substantive due process is analysis is appropriate in cases that involve excessive force where specific constitutional provision - such as the Fourth or Eighth Amendment - does not apply."). *But cf. Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988) ("While it is true that not all force used by police rises to a constitutional violation, . . . it is equally true that the use of excessive force against an arrestee or pretrial detainee . . . is actionable under § 1983 as a deprivation of life or liberty without due process of law, in violation of the Fourteenth Amendment.").

13

Therefore, Plaintiff's claims for excessive force must proceed under the Fourth Amendment and not substantive due process under the Fourteenth Amendment.

      b.     *Claims against Denver*

Plaintiff also asserts claims against Denver for (1) instituting unlawful practices or policies regarding investigation of potential suicide threats and the use of force against individuals and (2) failure to properly train Burke in investigating potential suicide threats, search and seizure, and the use of force. Defendants argue that they are entitled to summary judgment on these claims because Plaintiff has failed to demonstrate an issue of fact regarding Denver's policies, customs, training, or supervision. Plaintiff argues that summary judgment is not appropriate because Defendants have not met their initial burden of showing a lack of a genuine issue of fact and have identified "no evidence of any training or supervision of Defendant Burke relevant to this case." (Resp. at 8.) I agree with Defendants.

Municipalities may be sued for monetary, declaratory, or injunctive relief under section 1983 for constitutional violations. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. 658). To be liable, the municipality must be the "moving force" behind the constitutional violation. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citing *Monell*, 436 U.S. at 694); *Myers v. Okla. County Bd. Of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) ("A plaintiff suing a municipality under section 1983 for acts of one of its employees must prove: (1) that the municipal

employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation."). Therefore, although a failure to train is not sufficient by itself to prove a constitutional violation, "section 1983 plaintiffs can use a municipality's failure to train as one way to make the required showing that a municipal policy or custom was the 'moving force' behind an already established constitutional deprivation." *Myers*, 151 F.3d at 1317. However, "a municipality may be held responsible under § 1983 for inadequate supervision and training of its employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come in contact.'" *Schepp v. Fremont County*, 900 F.2d 1448, 1454 (10th Cir. 1990) (quoting *City of Canton*, 489 U.S. at 388–89).

In this case, Defendants have identified a lack of evidence for an essential element of Plaintiff's claims against Denver—that Denver's policies or practices were the moving force behind the constitutional violation. The burden now shifts to Plaintiff to "establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115 (citing *Hulsey*, 43 F.3d at 557). Plaintiff has not demonstrated any link between Denver's policies or practices and the alleged constitutional deprivations suffered by Plaintiff beyond alleging that they were the cause of the violations. However, conclusory allegations that Denver failed to adequately train or supervise Burke are insufficient to survive summary judgment.

Accordingly, it is ordered:

1. Defendants' motion for summary judgment (Docket No. 25) is granted in part and

denied in part.

2. Plaintiff's complaint is dismissed with prejudice to the extent that it asserts any claims arising under the Eighth Amendment, claims for violations of procedural due process, claims for substantive due process against Burke, any and all claims against Denver.

3. Plaintiff's claims arising under the Fourth Amendment remain pending.

DATED at Denver, Colorado, on January 10, 2008.
                                              BY THE COURT:


                                              s/ Walker D. Miller
                                              United States District Judge